IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2011

## STATE OF TENNESSEE v. BRYAN KEITH BRADFORD

**Appeal from the Circuit Court for Gibson County**
**No. 18276    Clayburn Peeples, Judge**

---

**No. W2010-02627-CCA-R3-CD  - Filed May 25, 2012**

---

The Defendant, Bryan Keith Bradford, appeals from his conviction upon his guilty plea for robbery, a Class C felony. See T.C.A. § 39-13-401 (2010). The trial court sentenced the Defendant to three years' incarceration as a Range I, standard offender. On appeal, he contends that the trial court erred in denying him a community corrections sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JERRY L. SMITH, J., not participating.

Clifford K. McGown (on appeal), Waverly, Tennessee; and Tom W. Crider (at trial and of counsel on appeal), Trenton, Tennessee, for the appellant, Bryan Keith Bradford.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Garry Brown, District Attorney General; and Stephanie Hale and Larry Hardister, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

According to the facts recited by the State at the combined guilty plea and sentencing hearing, the Defendant stole a seventy-six-year-old woman's purse by grabbing it from her while she was in her yard. The victim was not knocked to the ground. The purse contained personal information, keys, cash, and Walmart gift cards. The gift cards were used the following day. The Defendant acknowledged that these facts were correct.

After the trial court accepted the plea, the Defendant testified that he was one day shy of his twenty-third birthday. He said that he had been employed at an automotive business for approximately six months and that he was a good worker and had job security. He agreed he gave a truthful statement admitting his guilt. He agreed that in his previous statement, he said Timmy Dresail suggested that he take the victim's purse. The Defendant admitted that he was the person who robbed her. He said there was $20 cash and a $50 gift card in the purse. He received $5 or $10, and Mr. Dresail received everything else. He said Mr. Dresail disposed of the purse and its remaining contents.

The Defendant testified that he "felt real bad" after the crime and said, "I don't do stuff like that[.]" He said he associated with the wrong people and abused drugs at the time. He said that he voluntarily entered the JACOA rehabilitation program two weeks later and that when he was arrested after he completed the program, he confessed. He spent eighty-eight days in jail. He said he never wanted to return. He said he thought about the crime every day. Because he had been ordered not to contact the victim, he gave the apology letter he wrote her to his attorney. In the letter, the Defendant apologized and asked for the victim's forgiveness. He said he was trying to lead a responsible life by attending church and working. He told the victim she should not be afraid of him and said he prayed for her every day.

The Defendant testified that he did not have a functional family upbringing. He said his father, who was "always on the road going to doctors getting pills," died when he was ten years old. He said his mother tried to raise his sister, two brothers, and him, but did not work and was unable to care for them. He said that he lived in foster homes and that he moved in with a friend at age seventeen. He said his sister and one of his brothers also lived in foster homes.

The Defendant testified that he became a different person after the crime and that he had never done as well in his life. He said he had not used alcohol or drugs since the crime. He said he wanted to be a productive citizen and did not want to break the law again.

On cross-examination, the Defendant acknowledged a misdemeanor conviction for underage drinking and juvenile adjudications involving alcohol use. He admitted that he also had several moving violation convictions. He agreed that he attended rehabilitation treatment after his juvenile adjudications. He did not know why they did not return the victim's purse and contents such as her Social Security card or place them in a mail box. He said there was "so much peer pressure by the other fellow" involved. He lived with his girlfriend and did not have any children. He said he was a high school graduate. He agreed he deserved punishment.

Kathy Eversole, the Defendant's girlfriend, testified that she had never seen the Defendant use drugs, although he used alcohol previously. She was unaware of his having used drugs or alcohol since his JACOA treatment. She said the Defendant worked and helped care for her uncle by "doing the man things" like mowing and cleaning gutters. She said that she and the Defendant began dating a few weeks after the offense but that she was unaware of the offense until the Defendant "broke down" and told her about it. She said she advised him to admit his guilt. She did not think the Defendant was a danger to the community. On cross-examination, Ms. Eversole said her three adult sons did not live with the Defendant and her. She said she had been married to an alcoholic and did not tolerate drinking.

Mark Cruse testified that he and his wife were the Defendant and Ms. Eversole's landlords and their friends, as well. He said he had never seen the Defendant drink alcohol or use drugs. He said they met the Defendant around the time the Defendant and Ms. Eversole began dating. He said the Defendant was remorseful.

Jada Cruse testified that she owned a pet grooming business and was enrolled in a pre-veterinarian program. She said that when she learned of the Defendant's crime, she advised Ms. Eversole to take him to a homeless shelter. She said she became better acquainted with the Defendant at Christmas and reconsidered her initial unfavorable impression of him. She said she did not think the Defendant was a danger to the community and thought he was sincere in his efforts to live productively. She said the Defendant appeared remorseful for the crime. She said the Defendant was released from jail around Christmas, found a job, and "hung on for dear life."

The presentence report reflects that the Defendant had convictions as an adult for violating the seatbelt law and that he received diversion for an alcohol offense at age eighteen. He had juvenile adjudications for failure to use a seatbelt or child restraint, two other traffic offenses, underage possession of beer, and vandalism. The Defendant reported past use of alcohol, marijuana, and Xanax beginning at age twelve.

The victim impact statement attached to the presentence report states that the victim was uncomfortable in her home and yard and that her family members and neighbors were concerned for their safety. She said she realized that as an elderly woman, she was vulnerable. She said her purse contained Walmart shopping cards valued at $60 to $100, jewelry, a checkbook with records she needed for tax purposes, and other papers. She said she incurred locksmith expenses as a result of the crime.

In imposing the sentence, the trial court found that the Defendant took full responsibility for his actions but that the circumstances of the offense required incarceration.

The court noted that members of the community were placed in fear following offenses of this nature, that the victim was elderly, and that the crime was not committed on impulse. The court said that the Defendant received a minimum sentence by virtue of the favorable evidence he presented, but it denied community corrections based upon the circumstances of the case.

On appeal, the Defendant contends that the trial court erred in denying community corrections. The State counters that the trial court properly denied the Defendant's request for community corrections. We agree with the State.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if confinement is appropriate, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C) (2010). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4).

A defendant is eligible for an alternative sentence if his sentence is under ten years and his offense is not among those excluded from consideration for probation. See T.C.A. § 40-35-303(a) (Supp. 2007) (amended 2009, 2010). Absent evidence to the contrary, a defendant should be considered a favorable candidate for alternative sentencing if he is a mitigated or standard offender convicted of a Class C, D, or E felony. T.C.A. § 40-35-102(6) (2010); see also State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

Under the Tennessee Community Corrections Act, trial courts may sentence certain felony offenders to community-based alternatives to incarceration. See T.C.A. § 40-36-103(1) (2010); State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) (stating that "trial courts are in the best position to ascertain an offender's amenability to a community corrections program"). In pertinent part, the Act provides:

> (a)(1) An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

> (F) Persons who do not demonstrate a pattern of committing violent offenses.

T.C.A. § 40-36-106(a)(1)(A)-(F) (2010). Subsection (c) provides that defendants "who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community" may be eligible for community corrections. See T.C.A. § 40-36-106(c).

As a Range I, standard offender convicted of a Class C felony, the Defendant was eligible for an alternative sentence. We note that the Defendant was convicted of robbery, an offense against the person. See State v. Franklin, 308 S.W.3d 799, 826 (Tenn. 2010); see also T.C.A. § 39-13-401 (classifying robbery as an offense against the person). He was not eligible for community corrections under Code section 40-36-106(a)(1)(B).

The remaining question is whether he should have been sentenced to community corrections under the "special needs" provision of section 40-36-106(c). For a defendant to be eligible for the special needs provision of community corrections, the trial court must determine that (1) the defendant is eligible for probation, (2) the defendant has a history of substance abuse or mental health problems, (3) these factors reasonably related to and contributed to the criminal conduct, (4) the special need is treatable, and (5) the treatment could be best served in the community. See Grigsby, 957 S.W.2d at 546-47 (citing Boston, 938 S.W.2d at 439). The defendant carries the burden of showing eligibility for the special needs provision. See Grigsby, 957 S.W.2d at 547 n.11.

The record reflects that the Defendant had a history of alcohol abuse, that he successfully completed a rehabilitation program, and that he was living productively in the community. We conclude that he demonstrated his eligibility for consideration for community corrections sentencing under the special needs provision. This, however, does not end the inquiry. Mere eligibility for community corrections does not dictate that a defendant must be placed in the program.

The trial court noted the Defendant's positive efforts but found that the need to avoid depreciating the seriousness of the offense required a sentence of incarceration. The record reflects that the Defendant committed a robbery of an elderly woman at the urging of another person. He grabbed the victim's purse from her on her own property. He kept cash from the purse. Walmart gift cards from the purse were used the next day. The victim lived in fear following the attack, as did her family and neighbors. The court gave the Defendant the benefit of his mitigating proof in setting the length of the sentence. The court noted that it considered the Defendant's recent productive lifestyle in sentencing him to a minimum, three-year sentence. We conclude that the Defendant has not demonstrated that the trial court abused its discretion in denying alternative sentencing, and specifically, community corrections.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE